ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This disciplinary matter arises from two consolidated sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Jean Marie Lacobee, an attorney licensed to practice law in Louisiana but currently on interim suspension. In re: Lacobee, 02-2597 (La.10/30/02), 831 So.2d 835.
UNDERLYING FACTS AND PROCEDURAL HISTORY

00-DB-090

The Graves Matter

On March 29,1999, Betty J. Graves paid respondent $550 to handle two separate legal matters. In the first matter, Ms. Graves sought to recover profits she allegedly lost when a stock sale was not promptly executed by the transfer agent. In the second matter, Ms. Graves sought to recover sums allegedly owed her by a gardener whom she formerly employed. After undertaking the representation of Ms. Graves, respondent failed to make any appreciable progress toward the completion of her legal matters. Ms. Graves discharged respondent on April 30, 1999 and requested a refund of the unearned portion of the legal fee she paid. Respondent did not comply with this request until August 2000, when she refunded $87.50 to Ms. Graves.

12The Williamson Matter

Beverly Williamson retained respondent to file a Chapter 7 bankruptcy proceeding. In December 1998, Ms. Williamson paid respondent $500 to handle the bankruptcy, plus $175 for court costs. Respondent filed the bankruptcy petition in March 1999. It was subsequently determined that all of Ms. Williamson’s assets — the most significant of which was a herd of dairy cattle — were not listed on the bankruptcy schedules, necessitating the filing of amended schedules. In April 1999, Ms. Williamson paid respondent an additional $450 for preparing and filing the amended schedules. Respondent was discharged by Ms. Williamson in May 1999, before the bankruptcy proceeding was concluded; however, respondent refused to account for the legal fee she was paid or to refund any unearned portion.
In addition to the bankruptcy matter, Ms. Williamson also requested that respondent handle an intrafamily adoption proceeding on her behalf. Ms. Williamson paid respondent $1,000 to handle the adoption, plus $200 for court costs. Ms. Wil *239 liamson terminated this representation at the same time she terminated the representation in the bankruptcy matter. Although respondent did not complete the adoption before she was discharged, she refused to account for the legal fee she was paid or to refund any unearned portion.

00-DB-1S1

The Dorsett Matter

In February 1998, Charles I. Dorsett, Ph.D., a mathematics professor at Louisiana Tech University, filed an employment discrimination suit against the university. Charles Dorsett v. Louisiana Tech University, et al., No. 98-0210 on the docket of the United States District Court for the Western District of Louisiana. At |3this time, Dr. Dorsett was not represented by counsel. Dr. Dorsett subsequently visited several attorneys in an attempt to obtain representation on a contingency fee basis. In late June or early July 1998, Dr. Dor-sett and his wife met with respondent, and she agreed to accept the representation on a one-third contingency fee basis, with a minimum fee of $5,000. Dr. Dorsett paid respondent $5,000 by check dated July 16, 1998; however, respondent did not deposit this sum into her client trust account. Furthermore, respondent failed to obtain a written, signed contingency fee agreement from Dr. Dorsett.
In July 1999, Dr. Dorsett paid respondent $2,500 to be applied towards the costs and expenses of the litigation. Respondent did not deposit this sum into her client trust account. In December 1999, Dr. Dorsett paid respondent an additional $500 to cover costs. Thereafter, despite the fact that respondent had agreed to handle the matter on a contingency fee basis, she made repeated demands of Dr. Dorsett for payment of additional sums. When Dr. Dorsett refused to pay these additional sums, respondent withdrew from the representation in May 2000. Respondent failed to account for the legal fees she was paid or to promptly return Dr. Dorsett’s file, despite his requests that she do so. Dr. Dorsett subsequently filed a complaint against respondent with the ODC.
On August 22, 2000, respondent was personally served with a subpoena compelling her appearance before the ODC on September 12, 2000 to provide sworn testimony concerning the Dorsett matter. Respondent appeared at the appointed date and time and requested a continuance to obtain counsel.

\ ¿Formal Charges

On July 19, 2000, the ODC filed two counts of formal charges against respondent in 00-DB-090, alleging that her conduct in the Graves and Williamson matters violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.8 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15 (safekeeping property of clients or third persons), 1.16 (termination of the representation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
On October 24, 2000, the ODC filed one count of formal charges against respondent in 00-DB-131, alleging that her conduct in the Dorsett matter violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.5, 1.15, 1.16, 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(c), and 8.4(g) (failure to cooperate with the ODC in its investigation).
The two sets of formal charges were consolidated by order of the hearing committee chair on November 1, 2000. Respondent answered both sets of formal *240 charges and denied any misconduct in connection with her handling of the client matters at issue. The matter then proceeded to a formal hearing on the merits.

Hearing Committee Recommendation

After reviewing the evidence presented at the hearing, the hearing committee made the following factual findings and legal conclusions:

\ñThe Graves Matter

The committee found that Betty Graves retained respondent in 1999 to handle a claim for lost profits on a stock transaction and to locate a yard man who had failed to do work for which he had been paid in advance No hourly billing rate was discussed; however, Ms. Graves paid respondent the sum of $550 as the combined fee for handling both matters. In order to investigate the stock matter, respondent contacted a more experienced attorney, who advised her that it would be fruitless to pursue the profits lost in the transaction. Respondent performed computer research in an attempt to locate Ms. Graves’ yard man, which was unsuccessful.
After she was discharged, respondent provided Ms. Graves with an accounting showing her work performed in the matter. In the statement of services rendered, respondent gave her client credit for paying $500 in legal fees when Ms. Graves had actually deposited $550, and respondent billed total charges of $412.50. Respondent refunded $87.50 to Ms. Graves. However, the committee felt that respondent performed little, if any, work that benefitted Ms. Graves, and billed her excessively for what work she did perform. For example, respondent charged one hour at $150 per hour for her telephone consultation with another lawyer, when that lawyer testified the conversation lasted approximately three to twelve minutes. In addition, respondent billed one hour for her unsuccessful computer research, and billed one-third of an hour for preparing the accounting. The committee concluded that respondent attempted to fabricate a statement of services rendered in order to justify retention of the funds deposited by Ms. Graves. Accordingly, the committee found respondent violated Rule 1.5 in billing and retaining an unreasonable fee which was grossly in excess of the value of the services rendered,to the client, and violated Rule 1.15 by failing to properly account to her client for funds advanced by the client.
U The Williamson Matter
In November 1998, Beverly Williamson retained respondent to handle her Chapter 7 bankruptcy. Respondent agreed to handle the matter for $500 plus court costs. Respondent filed the initial bankruptcy pleadings; however, the schedules were incomplete as they failed to disclose Ms. Williamson’s sale of 150 head of dairy cows. The committee found no evidence that respondent either intentionally or negligently failed to include this information in the bankruptcy schedules, as prior to the initial bankruptcy filing, Ms. Williamson had not provided respondent any information concerning the cows. The bankruptcy trustee subsequently initiated an investigation to determine whether the failure to list the cows as assets of the bankruptcy estate constituted bankruptcy fraud. The trustee determined that Ms. Williamson was not guilty of bankruptcy fraud and allowed her to amend her schedules. Respondent obtained the necessary information from Ms. Williamson and filed the amended schedules on or about April 28, 1999. Respondent charged Ms. Williamson an additional fee (in addition to the flat fee initially agreed upon) for filing the amended schedules, which additional fees the committee found were reasonable. Therefore, the committee found no clear and convincing evidence that respondent *241 violated the Rules of Professional Conduct in connection with her handling of the bankruptcy matter.
Ms. Williamson also retained respondent to handle her husband’s adoption of her two children from a prior marriage. Ms. Williamson paid a fee of $1,000 plus $200 in court costs for the adoption matter. Ms. Williamson discharged respondent in May 1999, at which time respondent had not completed the adoption proceedings. Respondent has failed to account to Ms. Williamson for the $1,000 fee and the $200 in court costs since being discharged, in violation of Rules 1.5, 1.15, and 1.16 of the Rules of Professional Conduct.

\nThe Dorsett Matter

Respondent agreed to accept the representation of Dr. Dorsett based upon a modified contingency fee arrangement which provided for a “minimum fee” of $5,000, to be credited against a one-third contingency fee in the event of a successful outcome. Although a contingency fee agreement was prepared, no agreement was ever signed by the parties, in violation of Rule 1.5.
Pursuant to their verbal contingency fee agreement, Dr. Dorsett paid respondent $5,000 by check dated ‘July 16, 1998. Although the $5,000 was not deposited into respondent’s client trust account, the committee found the ODC failed to show by clear and convincing evidence that this payment represented anything other than a “minimum fee” which could appropriately be deposited into respondent’s operating account. However, the committee did find clear and convincing evidence that the $2,500 check Dr. Dorsett gave respondent in July 1999 was not part of a “minimum fee” and should have been deposited into a client trust account. The evidence is clear that the $2,500 check was to cover litigation expenses, such as taking depositions and for other expenses. Respondent deposited the $2,500 check into her personal account, in violation of Rule 1.15.
Respondent withdrew from the representation of Dr. Dorsett in May 2000, but did not provide Dr. Dorsett an accounting for the funds which were given her for purposes of covering the costs of the litigation. The committee found such conduct violated Rule 1.16(d). After her withdrawal from Dr. Dorsett’s case, respondent failed to promptly provide Dr. Dorsett his file despite repeated requests to do so and despite the fact that the federal court had given Dr. Dorsett only thirty days to obtain new counsel. Respondent delayed the return of Dr. Dorsett’s file materials and conditioned return of the materials upon payment of a charge for copying the file. The committee [^agreed it is permissible for an attorney to require a client to pay for duplication of his or her file, but noted that in this case, respondent had previously received $2,500 for expenses from Dr. Dorsett. There is no indication that any of said amount had been applied to expenses of the litigation, and presumably these funds were available to cover the cost of copying Dr. Dorsett’s file. Accordingly, the committee found respondent’s delay in returning the file constitutes a violation of Rule 1.16(d).
In connection with Dr. Dorsett’s complaint, the ODC issued a subpoena which was served on respondent on August 22, 2000 to compel her attendance at a sworn statement scheduled for September 12, 2000. Respondent traveled to Baton Rouge from Shreveport on that date and appeared at the Office of Disciplinary Counsel at the appropriate time, but asked for a continuance to obtain counsel. When Disciplinary Counsel refused the request for a continuance and advised respondent that it would be necessary for her to give a sworn statement on that date, she refused to proceed. Under the circumstances, the *242 committee found respondent’s actions did not constitute a failure to cooperate with the ODC in its investigation.[1]
Turning to the issue of the appropriate discipline for respondent’s misconduct, the committee determined that the ABA’s Standards for Imposing Lawyer Sanctions support a baseline sanction of suspension. As mitigating factors, the committee recognized respondent’s inexperience in the practice of law (admitted 1997) and her medical condition (ADHD). However, the committee felt the mitigating factors are greatly outweighed by the aggravating factors present, including pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and indifference to making ^restitution. Under these circumstances, the committee recommended that respondent be suspended from the practice of law for two years.
Respondent and the ODC both filed objections to the hearing committee’s recommendation.

Disciplinary Board Recommendation

In the Graves matter, the board agreed respondent violated Rule 1.5 by charging an unreasonable fee to Ms. Graves, and violated Rules 1.5(f) and 1.16(d) by her failure to promptly deliver the funds actually due her client, by her failure to place disputed funds in trust, and by her failure to provide a prompt accounting. The board also found that respondent engaged in dishonest conduct in violation of Rule 8.4(c) by charging her client an unreasonable fee and retaining the bulk of the funds advanced by the client based upon a fabricated bill. However, like the committee, the board declined to find a violation of Rules 1.3 and 1.4, noting respondent was discharged by Ms. Graves after only one month.
As to the Williamson matter, the board found respondent violated Rules 1.5(f)(6) and 1.16(d) by failing to refund an unearned fee, failing to place disputed funds in trust, and failing to provide an accounting. Like the committee, the board did not find a violation of Rule 8.4(c), observing there was no clear and convincing proof of dishonest conduct.
In the Dorsett matter, the board found respondent violated Rule 1.5 by entering into a contingency fee agreement without obtaining a signed written contract and violated Rule 1.15(a) by failing to place an advance deposit for costs into a trust account, resulting in a conversion of those funds. Upon termination, her acts in failing to promptly release the file, forcing Dr. Dorsett to pay copy costs by mailing the file |into him “cash on delivery,” and failing to return the unused funds violated Rule 1.16(d). However, the board found no clear and convincing proof that respondent acted dishonestly in violation of Rule 8.4(c). Finally, the board adopted the reasoning of the committee in its determination that respondent did not fail to cooperate with the ODC.
In determining the appropriate sanction, the board found respondent’s actions were knowing for the most part. It found her pattern of refusal to place disputed funds in trust, to provide proper accountings, and to refund unearned fees caused actual damage not only to her clients, but also to the public and to the profession. The board determined the baseline sanction for this misconduct is a suspension from the practice of law.
*243 The board adopted the aggravating factors cited by the hearing committee, and agreed that the record supports the mitigating factors of inexperience in the practice of law and personal problems (respondent’s ADHD). The board specifically noted that much of respondent’s misconduct can be attributed to her inexperience, incompetence (not only with respect to the legal matters she handled, but particularly with respect to fees, billing, and the business of running a law office), and ignorance of her ethical obligations regarding the handling of client funds and funds in dispute. However, the board concluded that ignorance of the disciplinary rules is not a defense, and the discipline imposed in this matter should be designed to protect the public.
In determining an appropriate sanction, the board primarily relied upon Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), particularly considering respondent’s conversion of the costs advanced by Dr. Dorsett. Applying Hinrichs, the board noted there is no evidence that respondent was acting in bad faith relative to her failure to maintain a proper client trust account, and the amount of money involved was not great. Nevertheless, the board felt respondent’s conduct |, exhibited a “high degree of negligence” which warrants a three-year suspension, particularly considering the “padding” of the Graves bill and her refusal to place disputed funds in trust, to provide proper accountings to her clients, and to return unearned fees. However, in light of respondent’s inexperience, the board determined it is appropriate to defer one year of the suspension.
Accordingly, the board recommended that respondent be suspended from the practice of law for three years, with one year deferred. The board also recommended that respondent refund any unearned fees due to Dr. Dorsett, Ms. Graves, and Ms. Williamson. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
Respondent and the ODC both filed objections to the disciplinary board’s recommendation. The case was then docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
Based on our review of the record, we conclude the factual findings of the hearing committee are supported by the record. The evidence demonstrates respondent has refused to place disputed funds in trust, to provide proper accountings, and to refund unearned fees. She acted dishonestly in the Graves matter [12by fabricating a bill and converted funds in the Dorsett matter. These actions constitute violations of the Rules of Professional Conduct which warrant discipline. Accordingly, we now turn to a determination of the appropriate sanction.
The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the *244 profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760. So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct caused actual harm to her clients by depriving them of their funds and delaying resolution of their legal matters. The baseline sanction for such misconduct ranges from a lengthy suspension to disbarment. See, e.g., In re: Brown-Singh, 01-0669 (La.4/27/01), 789 So.2d 1256 (three-year suspension imposed on attorney charged with several professional violations, including failing to account for and return unearned legal fees and commingling funds); Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986) (setting forth the range of discipline in conversion cases).
We find several mitigating factors are present, including respondent’s personal and emotional problems, her general lack of a selfish motive, and her inexperience in the practice of law at the time of the misconduct. Although these factors do not 1 13excuse her conduct, we find they are significant in determining the sanction to be imposed.
Considering the facts of this case, we find the appropriate sanction for respondent’s misconduct is a three-year suspension from the practice of law. In light of the mitigating factors, we will defer one year of the suspension.[2]
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Jean Marie Lacobee, Louisiana Bar Roll number 25319, be suspended from the practice of law in Louisiana for a period of three years, with one year of this suspension deferred. This suspension shall be retroactive to October 30, 2002, the date of respondent’s interim suspension. It is further ordered that respondent make full restitution to her clients of any unearned legal fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Indeed, the committee noted the ODC should have granted the continuance, given that no "exigent circumstances” then existed which required the denial of a short continuance of the sworn statement.

. The disciplinary board also recommended that respondent be placed on supervised probation for a period of two years, with specified conditions. However, conditions of reinstatement, along with any other relevant factors, may be addressed if and when respondent applies for reinstatement. See In re: Welcome, 02-2662 (La. 1/24/03), 840 So.2d 519; In re: Harris, 99-1828 (La.9/17/99), 745 So.2d 1172.