ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
, 1 t This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Robert A. Booth, Jr. For the reasons that follow, we suspend respondent from the practice of law for a period of two years.
UNDERLYING FACTS

The Runyan Matter

On April 14, 2004, Marvin Runyan, Sr. hired respondent to handle the interdiction of his sister. Marvin Sr. paid respondent $3,000 to complete the interdiction and $380 in advanced court costs. Instead of placing these funds into his client trust account, respondent deposited the funds into his operating account and consumed them, thus converting the funds to his own use.
Respondent’s paralegal drafted the necessary pleadings in the interdiction matter, which Marvin Sr. signed on May 25, 2004. However, respondent did not file the pleadings before Marvin Sr. died on June 24, 2004. Despite his client’s death and the fact that the interdiction pleadings were never filed, respondent did not refund any of the costs or fees.
| ^Beginning in September 2005, Marvin Sr.’s son, Marvin Runyan, Jr., wrote respondent three letters requesting the return of the $3,000 fee.[1] Having received no response from respondent, Marvin Jr. filed a disciplinary complaint against him in February 2006.
During a sworn statement in June 2006, respondent agreed to refund $2,780 to the Runyans.[2] Respondent paid this amount to the Runyans on June 22, 2006.
*160 The ODC alleges that respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.5 (charging an excessive fee and failure to refund an unearned fee), and 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.

The Carter Matter

In December 2004, Charles Carter (“Charles”), a resident of California, contacted respondent to request help in intervening in and staying the succession proceedings of his deceased parents, Hattie Carter and Lonnie Carter, both of whom were residents of Louisiana. Charles also requested help in proving that some of the named heirs were not Lonnie’s biological children. After reviewing the documents provided by Charles, respondent drafted a retainer fee agreement indicating Charles would pay $7,500 for the representation. Charles signed the fee agreement in February 2005 and forwarded a $3,000 check. He paid respondent the remaining $4,500 in October 2005.
|sEventually, respondent realized that he would not be able to help Charles because of a lack of evidence. Nonetheless, respondent did not withdraw from the representation, did not provide Charles with his file, did not provide Charles with an accounting, and did not refund the unearned fees.
in April 2006, Charles requested, via letter, that respondent refund the entire $7,500 fee plus interest or he would file a disciplinary complaint against respondent. Respondent promised to refund “a substantial portion” of the retainer fee if Charles would not file the disciplinary complaint against him.[3] However, respondent failed to refund any portion of the fee, and Charles filed a disciplinary complaint against him in May 2006.
In a November 2006 sworn statement, respondent admitted he probably owed Charles a $2,000 refund of the $7,500 fee, indicating he had done many hours of research and talked to Charles on the phone numerous times. He stated that he told Charles he could not file the pleadings Charles requested because they were frivolous. He also indicated he stopped returning Charles’ calls when Charles wanted him to try to collect the other heirs’ DNA from cigarette butts and soda bottles. However, he denied telling Charles he would refund the entire fee if Charles would not file a disciplinary complaint against him.
In April 2008, respondent indicated that he and Charles had gone to fee arbitration through the Louisiana State Bar Association. According to respondent, the arbitrator decided Charles was due a refund of a portion of the fee.[4] However, |4Charles *161 did not accept the arbitrator’s decision and requested a continuance. It is unclear from the record if respondent refunded any amount to Charles.
The ODC alleges that respondent violated Rules 1.3, 1.4 (failure to communicate with a client), 1.5, 1.16 (failure to properly withdraw from the representation of a client and failure to return a file), 8.4(a), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
After investigation, the ODC filed formal charges against respondent. Respondent answered the formal charges, denying most of the misconduct in the Runyan matter and denying all of the misconduct in the Carter matter. This matter then proceeded to a formal hearing on the merits.

Heating Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee rendered its report.
Regarding the Runyan matter, the committee found respondent received $3,380 as a “feed fee” and advanced court costs. It determined he deposited the entire amount into his operating account, as he maintained no trust account. According to the committee, respondent spent approximately three hours working on the matter, but did not file any pleadings prior to Marvin Sr.’s death. Marvin Jr. contacted respondent more than a year later to request a refund, but respondent took the position Isthat he did not know if he had the authority to terminate the attorney-client relationship, even though his client had died, because he thought perhaps other relatives would request that he continue with the interdiction. Marvin Jr. claimed that respondent stated he was unable to pay back the funds. The committee further found Marvin Jr. made two more requests for a refund, to no avail. Rather, the committee found that it was not until after the filing of the disciplinary complaint that respondent finally refunded $2,780 to Marvin Jr. With the refund, he included a release of claim, which Marvin Jr. did not execute.
Regarding the Carter matter, the committee found Charles paid respondent a total fee of $7,500, which respondent deposited into his operating account, as he did not maintain a trust account. According to the committee, respondent listened to Charles and responded to his telephone calls, but performed no other services. When respondent failed to act or return the fee and file, Charles threatened to file a disciplinary complaint. The committee determined that respondent left a message on Charles’ answering machine that he would return the entire fee if Charles would not file a disciplinary complaint.[5] Although respondent presented evidence at the hearing of his intent to enter into fee arbitration with Charles through the Louisiana State Bar Association, the committee noted he had no work product to justify the $4,000 fee he would charge *162 Charles and could not provide any reason for keeping the unearned ^portion of the fee other than to say he was waiting for the outcome of these disciplinary proceedings.
*161 I agree 100 percent. Yes. Now, what's wrong with that? If you want to pay somebody unearned fees if they will not turn you into disciplinary counsel, we all want to stay away from you ... we want to stay out of these situations. And if paying the money back would do it, a substantial amount, then I would, and I don’t see anything in the world wrong with that. The way you have referred to I forget which one of these documents, it sounds an awful lot like I’m bribing him. Here, here's some money, forget it. That was not the case. That was before this was ever done.
*162 Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges, except Rule 8.4(c) with respect to the Carter matter. The committed found that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. He acted intentionally and knowingly in injuring his clients and continues to injure Charles by withholding his funds, which should have been returned, at the very latest, in early 2006.
As aggravating factors, the committee found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1963), indifference to making restitution, failure to repay unearned fees, and attempting to intentionally preclude Charles from filing a disciplinary complaint by promising to return a clearly unearned fee. The committee found only one mitigating factor: absence of a prior disciplinary record.
After further considering this court’s prior jurisprudence, the committee recommended that respondent “be suspended immediately from the practice of law, and continuing for a period of at least 24 months from the date of the verified return of any and all unused client costs, and unearned fees.”
Neither respondent nor the ODC filed an objection to the committee’s report.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous except that, in the Carter matter, 17respondent did not offer to refund the entire fee but did offer to refund a “substantial portion” of the fee if Charles would not file a disciplinary complaint against him.
The board determined that respondent violated Rules 1.3, 1.5, and 8.4(a) in the Runyan matter and violated Rules 1.3, 1.4, 1.5, 1.16(d), and 8.4(a) in the Carter matter. Respondent violated Rule 1.3 by failing to file the interdiction in a timely manner and failing to promptly return unearned fees in the Runyan matter as well as failing to adequately represent Charles and failing to move toward terminating the attorney-client relationship in the Carter matter. Respondent violated Rule 1.4 in the Carter matter because he had no evidence that he communicated with Charles, who claimed to have had very little contact with respondent, and he admitted to cutting off communications with Charles after telling him he would not collect certain evidence on Charles’ behalf. Respondent violated Rule 1.5 because he charged excessive fees relative to the small amount of work he performed in both the Runyan matter and the Carter matter. He also violated Rule 1.5 by failing to timely refund unearned fees in both matters. Respondent violated Rule 1.16(d) in the Carter matter by failing to formally terminate the attorney-client relationship or return Charles’ file upon written request. Finally, respondent violated Rule 8.4(a) by violating the above rules. However, like the committee, the board determined that respondent did not violate Rule 8.4(c) in the Carter matter because it does not appear he lied to Charles or made misrepresentations to him, notwithstanding his failure to adequately communicate with his client.
*163 The board concluded that respondent knowingly, and in some instances intentionally, violated duties owed to his clients, the public, the legal system, and the legal profession. As aggravating factors, it recognized a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful | snature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. The only mitigating factor identified by the board was the absence of a prior disciplinary record.
Based on the ABA’s Standards for Imposing Lawyer Sanctions and the jurisprudence of this court, the board determined that an eighteen-month suspension is the baseline sanction in this matter. However, the board felt an upward deviation from the baseline sanction was warranted under these facts because of respondent’s continued failure to refund the unearned portion of the fee and his absolute refusal to acknowledge the wrongful nature of his conduct in the Carter matter. The board also noted that respondent deprived Charles and the Runyans of then-money for a significant period of time.
Accordingly, the board recommended that respondent be suspended from the practice of law for two years.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).[6]
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the | shearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the hearing committee’s factual finding that respondent failed to refund an unearned fee and advanced court costs to the Runyans even after numerous requests to do so. It was not until Marvin Runyan, Jr. filed a disciplinary complaint against him that respondent finally refunded the unearned $2,780.
Similarly, in the Carter matter, respondent neglected Charles’ legal matter, did not properly terminate the attorney-client relationship, failed to adequately communicate with Charles, and failed to return Charles’ file and the unearned fee. Moreover, when Charles indicated he intended to file a disciplinary complaint, respondent attempted to persuade Charles not to do so by agreeing to refund a “substantial portion” of the fee. However, as of the date of this opinion, respondent still has not refunded the unearned fee to Charles despite acknowledging that he has not earned a portion of the $7,500 fee.
These findings support the conclusion that respondent violated Rules 1.3, 1.4, 1.5, 1.16, and 8.4(a) of the Rules of Professional *164 Conduct, as charged in the formal charges. We agree with the hearing committee and the disciplinary board that there is not clear and convincing evidence of a Rule 8.4(c) violation in the Carter matter.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and | ^mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent has knowingly and intentionally violated duties owed to his clients. He caused them actual harm in that he deprived them of their funds for an extended period of time. The baseline sanction for this type of misconduct is a period of suspension. See, e.g. In re: Arbour, 05-1189 (La.11/29/05), 915 So.2d 345 (two-year suspension imposed upon an attorney who mishandled succession proceedings), and In re: Lacobee, 03-2010 (La.2/20/04), 866 So.2d 237 (three-year suspension, with one year deferred, imposed upon an attorney who failed to place disputed funds in trust, failed to provide proper accountings, failed to refund unearned fees, fabricated a bill, and converted funds).
The record supports the aggravating factors of a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct in the Carter matter, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. The only mitigating factor we are able to discern from the record is the absence of a prior disciplinary record.
Considering the entirety of the record in this case, we conclude the two-year suspension recommended by the disciplinary board is an appropriate sanction. Accordingly, we will suspend respondent from the practice of law for two years, and further order him to make full restitution in the Carter matter.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Robert A. Booth, Jr., Louisiana Bar Roll number 3271, be and he Inhereby is suspended from the practice of law for two years. It is further ordered that respondent shall make full restitution to Charles Carter. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. After Marvin Sr.'s death, a judgment of possession was rendered leaving his entire estate to his wife, Cherrie. Thereafter, Cherrie gave their son, Marvin Jr., power of attorney to handle her affairs.

. Respondent stated that he did approximately three hours of work on the interdiction. His normal hourly rate is $200. Therefore, he believed he earned approximately $600 of the $3,000 fee. He also stated that he would refund the $380 advanced court costs since he never filed any pleadings.

. Respondent left the following message on Charles’ answering machine: "Mr. Carter, this is Robert Booth in Shreveport. I've gotten your letter here, uh, I need to talk to you about this. I will certainly be happy to refund, uh, a substantial portion of your retainer fee, uh, but, uh, I’m not going to do (inaudible) it'll just make life hard for me. Give me a call. Thank you. Bye."

. In a letter to the disciplinary board dated April 10, 2008, respondent indicated the arbitrator decided that a fair and equitable attorney’s fee was $5,000, which meant that respondent had to refund $2,500. Then the arbitrator reduced that fee to $4,000. However, in his objection to the board’s recommendation filed in this court, respondent indicated that the arbitrator decided that Charles should be refunded $5,000, which the arbitrator later increased to $6,500. Furthermore, according to respondent, at a continuation of the arbitration on June 23, 2008, the arbitrator decided that Charles should be refunded the entire $7,500 if he dropped his disciplinary complaint against respondent. Respondent objected and has not heard from Charles since.

. When questioned at the hearing about telling Charles he would refund monies if Charles would not file a disciplinary complaint, respondent stated:

. Although the case was set on the court’s docket, respondent declined to appear for oral argument.