ATTORNEY DISCIPLINARY PROCEEDINGS
LPER CURIAM. *
This matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Alvarez T. Ferrouillet, Jr., an attorney licensed to practice law in Louisiana but who is currently on interim suspension.[1]
UNDERLYING FACTS
This matter arises out of respondent’s federal conviction for activities in connection with the 1993 congressional campaign *949 of Henry W. Espy, Jr/[2] After the unsuccessful campaign, Mr. Espy was left with considerable debt. Respondent agreed to chair the committee to retire Mr. Espy’s campaign debt, and in May 1993, respondent and his law firm guaranteed a $75,000 loan made to the Espy campaign by First National Bank of Clarksdale, Mississippi.
Respondent subsequently entered into an arrangement with John Hemmingson, president of Crop Growers Insurance, Inc. (“CGI”), which was intended to mask an illegal contribution by CGI to Mr. Espy’s campaign. Respondent drafted a fraudulent | ^engagement letter in June 1994, setting forth “legal services” to be rendered by respondent to CGI. In July 1994, Mr. Hemmingson wrote a $20,000 check on CGI’s account to respondent, purportedly to pay legal fees due under the engagement letter. However, no legal services were ever performed by respondent on CGI’s behalf.
Respondent then cashed the CGI check at a New Orleans grocery store, and in three separate transactions, he deposited the cash into an “Espy for Congress” account at a New Orleans bank. The money was later wired to the Clarksdale, Mississippi bank to make a partial payment on the Espy campaign loan.
Subsequently, Henry Espy’s failed congressional campaign became the target of an inquiry by the Independent Counsel who had been appointed to investigate the affairs of Mr. Espy’s brother, Agriculture Secretary Mike Espy. In the course of the investigation, an FBI agent asked respondent about the source of the cash deposits which were made to the “Espy for Congress” bank account in New Orleans. Respondent presented the agent with a document titled “Cash Donors,” listing 46 individuals and the corresponding amount each purportedly donated. When the FBI- began contacting these persons, all but one denied ever making a contribution.,- to Mr. Espy’s campaign. Respondent thereafter contacted the Independent Counsel to explain that the persons on the donor list had not given “contributions,” but had instead given “pledges” of support. However, when government agents again interviewed the persons on the “Cash Donors” list, they also denied giving “pledges” to Mr. Espy’s campaign.
In July and August 1996, a grand jury sitting in the Eastern District of Louisiana returned an indictment charging respondent with a total of sixteen counts of money laundering, interstate transportation of property taken by fraud, making false statements to federal agents, conducting monetary transactions affecting | ainterstate commerce, conspiracy to make false statements and defraud the United States, and making false statements to a financial institution.[3] Six of these charges were later transferred to the United States District Court for the Northern District of Mississippi.
After a December 1996 jury trial, respondent was convicted of the ten counts within the jurisdiction of the Eastern District of Louisiana. In February 1997, respondent pleaded guilty to the six- counts within the jurisdiction of the Northern District of Mississippi. The Louisiana and •Mississippi counts were consolidated for sentencing purposes. The federal court fined respondent $10,000 and sentenced him to serve twelve months in a halfway house, followed by a five-year period of supervised release. Although the federal sentencing guidelines set a range of 41-51 *950 months imprisonment in money laundering cases, the federal court deviated dramatically from the guidelines on the ground that the facts of respondent’s case were not typical of a money laundering case. Respondent’s conviction and sentence were later affirmed on appeal. United States v. Hemmingson, 157 F.3d 347 (5th Cir.1998).[4]
DISCIPLINARY PROCEEDINGS
On May 22, 1997, this court placed respondent on interim suspension pursuant to Supreme Court Rule XIX, § 19 and directed that necessary disciplinary proceedings be instituted. On June 5, 1997, the ODC filed formal charges against respondent based on his conviction. Respondent answered the formal charges and admitted his ^conviction, but requested a hearing in mitigation. Accordingly, when a formal hearing was held before the hearing committee, the sole issue to be determined was the appropriate sanction for respondent’s misconduct.
At the formal hearing, the ODC introduced documentary evidence of respondent’s convictions, including the indictment, the jury’s verdict form, the pre-sentence investigation report, and the district court’s judgment and order of probation/commitment. Respondent testified before the committee on his own behalf, and was the only witness to appear. Respondent also introduced documentary evidence in mitigation, including the district court’s sentencing order and reasons for a downward departure from the sentencing guidelines, respondent’s motion for a downward departure from the sentencing guidelines and memorandum in support, and respondent’s post-verdict motion for a judgment of acquittal.

Recommendation of the Hearing Committee

After considering the evidence, the hearing committee filed its recommendation with the disciplinary board, recommending respondent be suspended from the practice of law for two years.[5] The committee found no “substantial aggravating factors” among those listed in the ABA’s Standards for Imposing Lawyer Sanctions. The committee acknowledged that respondent is experienced in the practice of law, but noted that he did little to utilize this experience in his scheme to retire Henry Espy’s campaign debt. In support, the committee pointed to the holding of the Fifth Circuit Court of Appeals that respondent did not employ his skills as an attorney in | (¡committing his crime and that “he never performed legal services to facilitate or conceal the crime.” Hemmingson, 157 F.3d at 359.
However, the committee found numerous factors favoring mitigation, including the fact that respondent had no prior disciplinary record, did not have a selfish motive, cooperated with the disciplinary proceedings, and showed remorse at his illegal actions. The committee found the amount of monetary injury resulting from his actions was minimal, and injury to a client was nonexistent. It recognized that the federal court made a substantial departure from the federal sentencing guidelines by imposing a minimal sentence. Finally, it referred to the numerous letters in the record which spoke highly of respondent’s character and reputation.
The committee concluded that, despite respondent’s crimes, sufficient mitigating circumstances exist to show that he is capable of continuing in the practice of law. The committee therefore recom *951 mended that respondent be suspended from the practice of law for two years.

Disciplinary Board Recommendation

In its recommendation, the disciplinary board recognized that the issue before it is the appropriateness of the sanction recommended by the hearing committee. The board felt this court’s prior jurisprudence demonstrates that the discipline imposed on lawyers convicted of criminal offenses ranges from a two-year suspension to disbarment, “all of which turns on the aggravating and mitigating factors.” The board accepted as mitigating factors in the instant case absence of prior discipline, absence of selfish motive, cooperative attitude toward the disciplinary proceedings, remorse, character and reputation, and imposition of other penalties or sanctions. The sole ^aggravating factor recognized by the board is substantial experience in the practice of law.
Considering the jurisprudence, and in light of the mitigating factors, the board concluded that respondent’s conduct is “more than adequately” addressed by a three-year suspension. In support of its recommendation, the board noted that no client was harmed by respondent’s conduct and that respondent’s actions did not occur during his representation of a client or in his capacity as an attorney. Moreover, the board felt that the federal district judge’s comments during respondent’s sentencing were “particularly enlightening if not persuasive.” Finally, citing Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La. 1986),[6] the board suggested that respondent is “reformable” and that disbarment is not warranted under the facts of this case.
Accordingly, the board recommended that respondent be suspended from the practice of law for three years, effective the date of his interim suspension.
Although neither respondent nor the ODC objected to the board’s recommendation, this court, on its own motion, ordered briefing and argument from the parties, and the matter was docketed for oral argument pursuant to Rule XIX, § 11(G)(1)(a).
^DISCUSSION
In fashioning an appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
It is undisputed that respondent was convicted of serious crimes, including money laundering. However, we find it significant that the federal court concluded respondent’s conduct fell outside the “heartland” of traditional money laundering cases. In deviating from the federal sentencing guidelines, the federal court explained:
Here, defendants were neither drug dealers nor organized crime members involved in a massive money laundering operation. Instead, the money laundering operation consisted of a business man and a lawyer attempting to make a $20,000 illegal campaign contribution and conceal its source. Although the money laundering guidelines linguistically fit this offense as the cash was the proceeds of the Crop Growers check and the concealment occurred on the down *952 wind side of the prohibited contribution, defendants’ conduct significantly differs from the norm of money laundering cases.
Likewise, while respondent was convicted on numerous counts, all the counts had their origin in a single act — i.e., the attempt by Hemmingson and respondent to funnel an illegal contribution into Mr. Espy’s campaign.
The record indicates there are numerous mitigating factors present, including respondent’s lack of prior discipline, cooperative attitude, demonstration of remorse, and his good character and reputation in the community. Respondent did not directly profit from his scheme, and his actions did not cause harm to a client.
| «Ordinarily, the baseline sanction for respondent’s conduct would be disbarment. However, in light of the federal court’s reasons, and the numerous mitigating factors present, we find it is necessary to deviate from this baseline sanction. Considering all the circumstances, we conclude the three-year suspension from the practice of law recommended by the disciplinary board is the appropriate sanction in this case.
DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Alvarez T. Ferrouillet, Jr. be suspended from the practice of law in Louisiana for a period of three years, retroactive to the date of his interim suspension. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
KNOLL, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.
VICTORY, J., dissents and would disbar respondent.

 Marcus, J., not on panel. Rule IV, Part II, § 3.

. In re: Ferrouillet, 97-0372 (La.5/22/97), 694 So.2d 219.

. Henry Espy ran unsuccessfully for a Mississippi seat in the United States Congress vacated by his brother, Mike Espy, who had been appointed by President Clinton to serve as the Secretary of Agriculture.

. Also named in the indictment were Henry Espy; John Hemmingson, the president of CGI; Ferrouillet & Ferrouillet, respondent's law firm; and Municipal Healthcare Cooperative, Inc., a Louisiana corporation of which respondent is a 50% owner. Not all of the sixteen counts charged against respondent are applicable to the co-defendants.

. Respondent was thereafter disbarred from the practice of law before the Fifth Circuit.

. Initially, the matter was heard by a different hearing committee, which recommended respondent be disbarred. Respondent filed an objection to the committee’s recommendation in the disciplinary board, relying on several exhibits which he asserted had not been introduced before the hearing committee, including 75 character letters submitted to the federal court supporting leniency for respondent. The disciplinary board then remanded the matter to the hearing committee to allow this evidence to be placed into the record.

. In Hinrichs, this court observed:
The purposes of a disciplinary proceeding are to evaluate the character of a lawyer, in the light of his conduct and background, to determine whether he is morally fit to continue in the practice of the law; and to remove him from the profession if he is unable or likely to be unable to discharge his professional duties; or, if the lawyer is reformable, to impose a suspension or other sanction to correct and deter the errant attorney, deter other lawyers from similar misconduct, and recompense for the damage done to the legal profession and the administration of justice, [citations omitted]