ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Carl W. Cleveland, an attorney licensed to practice law in Louisiana but currently on interim suspension.[1]
*1190 UNDERLYING FACTS AND PROCEDURAL HISTORY
Respondent acted as the attorney for Fred Goodson and his family, the operators of a truck stop business in Slidell, Louisiana. In 1992, respondent assisted Mr. Goodson in the formation of Truck Stop Gaming, Ltd. (TSG), a limited partnership that operated video poker truck stops. Respondent also helped Mr. Good-son prepare and submit to the Louisiana State Police TSG’s application for a video poker license. The application required TSG to disclose full ownership information; persons or businesses who owned, or were intended to own, 5% or more of the video poker operation were required to provide detailed financial information and be found suitable by the State Police. TSG’s initial application identified Mr. Goodson’s adult children, Alex Goodson and Maria Good-son, as the sole beneficial owners of the partnership. In May 1992, the application was approved and TSG was issued a gaming license. TSG successfully submitted renewal applications in 1993, 1994, and 1995 which also listed no additional ownership interests.
li>By April 1995, respondent and Mr. Goodson had become concerned there would be substantial penalties owed to the Internal Revenue Service because no estimated tax payments had been made on the 1994 profits of TSG. On April 11, 1995, respondent telephoned Mr. Goodson with “a brain storm about how to solve the tax problem.” Respondent suggested to Mr. Goodson that
we need to take an amount that is roughly equal to the ... taxable income for the year and to cut two checks, back dating them to the last day of 1994. Um, one to either to you individually or to your management company for management services from the inception of the business.... I just want it to go where you get complete control of the funds and we will treat it as a deduction in 1994 to the partnership the Truck Stop Gaming, as income to you for 1995 and then to take roughly the other half of the income and pay it to this firm as an attorney’s fee deductible in 1994 and then what we’ll do is lend the money back, we’ll save enough to pay the taxes and since we don’t, we will be reporting it on our 95 returns we won’t have the penalties problem that would otherwise exist. We just gonna have to make estimated payments to cover it.
On April 13, 1995, the Goodson family’s CPA faxed a message to respondent informing him that the “final figure” for TSG’s 1994 taxable income was $1,351,956. On April 17, 1995, respondent prepared an invoice for “legal services” purportedly rendered by his law firm in the amount of $637,300. The invoice was backdated to December 15, 1994 to substantiate the “legal fees” to be shown as a deduction on the 1994 partnership tax return filed by TSG. Respondent also prepared an invoice for “management services” purportedly rendered by Mr. Goodson’s management company in the amount of $713,800. Like the invoice for legal services, the invoice for management services was backdated to December 15, 1994 to substantiate the “management fees” to be shown as a deduction on the 1994 partnership tax return filed by TSG. On July 12, 1995, TSG filed its 1994 partnership tax return with the |sIRS; the return was signed by Mr. Good-son and verified by a written declaration that it was made under the penalties of perjury.
*1191 On October 4, 1996, a federal grand jury returned a superseding indictment charging respondent and others with multiple counts of racketeering, mail fraud, conducting an illegal gambling enterprise, filing a false income tax return, money laundering, and conspiracy arising out of the establishment, licensing, and operation of TSG. In particular, the indictment alleged that respondent and Mr. Goodson committed mail fraud in obtaining and renewing TSG’s video poker licenses because the license applications fraudulently concealed the true ownership of TSG.[2] The indictment further alleged that respondent and Mr. Goodson conspired to commit tax fraud to evade the taxes due on approximately $1.3 million of income earned by TSG in 1994.
Before trial, respondent moved to dismiss the mail fraud counts on the ground that an unissued state license does not constitute “property” within the meaning of 18 U.S.C. § 1341.[3] The district court, Judge Sarah S. Vance presiding, denied the motion, concluding that licenses constitute property even before they are issued by the State. On June 27, 1997, a jury found respondent guilty of two counts of mail fraud (based on the mailings of the 1994 and 1995 TSG gaming license renewals), as well as money laundering, racketeering, and conspiracy counts predicated on the mail fraud. Respondent was also convicted of one count of tax conspiracy and one count |4of aiding and abetting the filing of a false tax return. On October 15, 1997, respondent was sentenced to serve 121 months in federal prison.
Among other arguments raised on appeal, respondent renewed his contention that an unissued state license is not property under the federal mail fraud statute. The United States Court of Appeals for the Fifth Circuit rejected this argument and affirmed respondent’s convictions and sentence on July 21, 1999. United States v. Cleveland, 182 F.3d 296 (5th Cir.1999). However, in a unanimous opinion rendered on November 7, 2000, the United States Supreme Court held that “ § 1341 requires the object of the fraud to be ‘property’ in the victim’s hands and ... a Louisiana video poker license in the State’s hands is not ‘property’ under § 1341.” Cleveland v. United States, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000). Based on this reasoning, respondent’s mail fraud convictions were vacated and the case was remanded for further proceedings consistent with the Court’s opinion.
Following remand, and pursuant to an agreement between respondent and the Government, Judge Vance vacated respondent’s convictions and sentences on all of the mail fraud, money laundering, racketeering, and conspiracy counts. In turn, respondent agreed not to appeal or otherwise contest his convictions of tax conspiracy, a violation of 18 U.S.C. § 371,[4] and *1192 aiding and abetting the filing of a Rfalse tax return, a violation of 26 U.S.C. § 7206(2).[5] On February 14, 2001, Judge Vance fined respondent $10,000 and re-sentenced Mm to serve thirty months in prison on the tax counts,[6] followed by an eighteen-month period of supervised release.
DISCIPLINARY PROCEEDINGS
On November 6, 1997, the ODC filed one count of formal charges against respondent arising out of his conviction. Respondent answered the formal charges and denied any misconduct. The disciplinary matter was then stayed pending the finality of respondent’s criminal conviction.

Formal Hearing

When this matter proceeded to a formal hearing on the merits on October 8, 2001, the ODC submitted documentary evidence in support of the formal charges, including respondent’s indictment, a minute entry in the criminal case reflecting the Injury’s verdict as to each count of the indictment, the decision of the United States Court of Appeals for the Fifth Circuit affirming respondent’s convictions and sentence, the decision of the United States Supreme Court vacating respondent’s mail fraud convictions, and the district court’s February 14, 2001 judgment and commitment order.
Respondent introduced several volumes of documentary evidence and testified on his own behalf. The documentary evidence included the briefs filed on respondent’s behalf in the Fifth Circuit Court of Appeals and the United States Supreme Court; the transcript of the April 27, 2000 hearing before Judge Vance on respondent’s motion for release, the court’s order granting the motion, and written reasons for judgment; the joint motion submitted by respondent and the Government disposing of the charges against respondent following the Supreme Court’s decision; a “no change” letter from the IRS concerning respondent’s tax liability for 1991, 1992, and 1993, accepting the returns for those years as filed; an assessment by the Federal Bureau of Prisons of respondent’s incarceration at the Federal Prison Camp in Pensacola, as well as various prison health and safety pamphlets that respondent rewrote during his incarceration; and hundreds of letters submitted to Judge *1193 Vance in anticipation of respondent’s sentencing, authored by respondent’s family, friends, clients, public figures, elected officials, and others, all attesting to respondent’s good character and reputation in the community.

Hearing Committee Recommendation

Considering the evidence and testimony presented at the hearing, the committee made the following findings of fact:
|71. Respondent was convicted on June 27, 1997 in the United States District Court for the Eastern District of Louisiana of one RICO count, one count of RICO conspiracy, two counts of mail fraud, four counts of money laundering, one count of tax conspiracy, and one count of aiding and abetting the filing of a false tax return.
2. The United States Court of Appeals for the Fifth Circuit affirmed respondent’s conviction.
3. Respondent then appealed his conviction to the United States Supreme Court, which granted his writ of cer-tiorari.
4. The United States Supreme Court heard arguments in respondent’s case on October 10, 2000, and on November 7, 2000, rendered an order reversing respondent’s 18 U.S.C. § 1341 conviction and remanding the matter for further proceedings consistent with that Court’s opinion. In doing so, the Court did not reverse any of the jury’s factual findings which were made beyond a reasonable doubt in supporting respondent’s convictions. Rather, the Court concluded that § 1341 requires that the object of a fraud be “property” in the victim’s hands. The Supreme Court’s decision was that Louisiana’s video poker license in the State’s hands was not “property” for purposes of § 1341.
5.After the matter was remanded to the Court of Appeals, respondent, through counsel, successfully argued for and obtained an order remanding the matter back to the District Court. Thereafter, respondent, through counsel, held discussions with the United States Attorney’s Office and entered into a Joint Motion dated February 14, 2001, in which the United States Attorney’s Office agreed to dismiss other counts against respondent.
|86. Per the Joint Motion, respondent stood convicted of Counts 13 and 15 of the Indictment, which are the charges involving tax conspiracy and aiding and abetting the filing of a false tax return.
7. The Louisiana Supreme Court inter-imly suspended respondent pursuant to Supreme Court Rule XIX, § 19 effective October 31,1997.
8. Formal charges were filed against respondent on November 6, 1997 and alleged as the basis for prosecution his conviction of a serious crime pursuant to Louisiana Supreme Court Rule XIX, § 19(E). The formal charges were served on the respondent and his counsel via certified mail on November 10,1997. On November 25, 1997, respondent filed a “Peremptory Exception, Answer and Request for Hearing.” The Peremptory Exception was later dismissed by the hearing committee chair on March 2, 1998.
9. Respondent has no prior disciplinary record.
10. Respondent demonstrated a cooperative attitude toward the disciplinary proceedings.
11. As revealed by an examination of the numerous letters of recommendation submitted from respondent’s friends, family and members of the *1194 community, respondent enjoys a good reputation in the community.
12. As shown by the letter from Ruth B. Dunnavant, respondent’s prison case manager, he exhibited exemplary behavior while incarcerated. Further, while in prison, respondent authored numerous safety manuals, including those entitled “Admission and Orientation Manual” and the Appendix thereto, “Occupational Safety and Environmental Health/ Safety Standards and Responsibilities of Inmate Supervisors,” “Inmate Orderly Instruction Manual/ Specific Cleaning Procedures and Responsibilities,” “Basic Safety Precautions [ 9for Chain Saw Use,” and “Inmate Job Safety Manual/ Safety Starts With Education/ The Right to Know.”
13. Respondent has suffered the imposition of other penalties or sanctions. He served a prison term of thirty months and paid a fíne and a special assessment to the Government.
14. At the time of the misconduct, respondent had substantial experience in the practice of law, being admitted in 1966.
15. The testimony of respondent indicates that he has refused, at least in part, to acknowledge the wrongful nature of his misconduct. In respondent’s post-hearing memorandum, his counsel writes, “My client has not, and will not, admit moral wrong doing regardless of the technical effect of 18 U.S.C. section 371. Technical guilt is established on the record by the convictions. We submit that the mandate to this Committee to look beyond technical guilt to the underlying conduct is a recognition of the principal that should be applied in this case. Technical guilt is possible without moral failure.”
Based on these factual findings, the committee determined the ODC proved by clear and convincing evidence that respondent has been convicted of a serious crime. The committee found respondent intentionally violated duties owed to the public and to the profession, and that actual harm resulted, in the form of the deterioration of the public’s confidence in the legal profession when a lawyer chooses to engage in dishonest conduct. Under the ABA’s Standards for Imposing Lawyer Sanctions,[7] and in light of the prior jurisprudence involving a lawyer’s act of conspiring to commit |ina crime or aiding and abetting in the commission of a crime,[8] the *1195 baseline sanction for respondent’s misconduct is disbarment.
In aggravation, the committee recognized respondent’s substantial experience in the practice of law and his failure to acknowledge the wrongful nature of his conduct. The committee recognized the following mitigating factors are present in this case: absence of a prior disciplinary-record, cooperative attitude toward the disciplinary proceeding, character and reputation, and imposition of other penalties or sanctions. Ultimately, however, the committee concluded that these mitigating factors do not warrant a downward deviation from the baseline sanction of disbarment.
Based on this reasoning, the committee recommended that respondent be disbarred.
Respondent filed an objection to the severity of the sanction recommended by the hearing committee, asserting that the three-year suspension imposed in In re: Ferrouillet, 99-3434 (La.6/30/00), 764 So.2d 948, is appropriate in this case.

Disciplinary Board Recommendation

InThe disciplinary board concurred in the hearing committee’s factual findings and determined that respondent’s conduct constitutes a violation of Rule 8.4(b) of the Rules of Professional Conduct (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer). Respondent intentionally violated duties owed to the public and as a professional. His conviction serves to undermine the credibility and integrity of the legal profession, as lawyers are supposed to serve the law, not subvert it. Respondent’s “brain storm” to help his client, Fred Goodson, and his daughter, Maria Goodson, avoid IRS penalties on their video poker income from the prior tax year was an exercise in circumventing the tax laws, and resulted in a $14,000 tax loss to the United States Treasury. The baseline sanction is clearly disbarment.
The board found the record supports the aggravating factors of dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. The following mitigating factors are present in this case: absence of a prior disciplinary record, character and reputation, and imposition of other penalties or sanctions.
The board rejected respondent’s reliance on In re: Ferrouillet, in which this court deviated downward from the baseline sanction of disbarment to impose a three-year suspension for a lawyer’s federal conviction involving money laundering of an illegal political campaign contribution. The board noted the federal district court’s declaration that Ferrouillet’s “conduct fell outside the ‘heartland’ of traditional money laundering cases.”[9] The mitigating factors of lack of prior discipline, cooperative attitude, remorse, and character and reputation were present, and Ferrouillet did not Indirectly profit from his scheme nor did he cause harm to a client. By contrast, in the instant case, the federal district court enhanced respondent’s prison sentence from 8-14 months to 30 months. The board also found that respondent has demonstrated no remorse for his actions, *1196 which involved the practice of law in’giving advice to his clients, the Goodsons, and that respondent stood to gain monetarily from his misconduct.
Concluding that the mitigating factors do not outweigh the aggravating factors, and rioting the gravity of respondent’s misconduct, the board concluded that a downward departure from the baseline sanction is not warranted in this case. The board recommended that respondent be disbarred.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). The discipline to be imposed depends on the seriousness of the offense and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
|13In the instant case, respondent has been convicted of one count of tax conspiracy and one count of aiding and abetting the filing of a false tax return, These crimes are felonies under federal law and clearly warrant serious discipline, The sole issue before the court is the appropriate measure of discipline to be imposed.
Respondent does not seriously dispute that the applicable baseline sanction is disbarment. However, like the respondent in In re: Ferrouillet, 99-3434 (La.6/30/00), 764 So.2d 948, he argues that the mitigating factors present warrant a downward deviation to a three-year suspension. We agree.
The record indicates that respondent has no prior disciplinary record in more than thirty years of practice. He has demonstrated a cooperative attitude during these proceedings and is remorseful for the harm caused by his conviction. Respondent also has an excellent reputation in the legal community and in the community at large. In our view, however, the most significant factor to be considered in mitigation is the penalty that has already been imposed upon respondent in the form of a federal prison sentence of thirty months. As United States District Judge Sarah Vance remarked during a hearing on respondent’s motion for release, this lengthy sentence “is a very high sentence for a tax fraud with a $14,000 loss.” This fact, considered together with all of the mitigating circumstances, is sufficiently compelling to warrant a downward deviation from the baseline sanction. Accordingly, we conclude the appropriate sanction for respondent’s misconduct in this case is a three-year suspension from the practice of law.
DECREE
Upon review of the findings and recom-mendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is _Jj|Ordered that Carl W. Cleveland, Louisi-ana Bar Roll number 4189, be suspended from the practice of law in Louisiana for a period of three years. This suspension shall be retroactive to October 31, 1997, *1197 the date of respondent’s interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In re: Cleveland, 97-2274 (La.10/31/97), 700 So.2d 1263.

. According to the Government, respondent and Fred Goodson were the true owners of TSG, not Alex and Maria Goodson. The Government alleged that respondent and Fred Goodson fraudulently concealed their ownership interests because they had tax and financial problems that would have made it difficult for them to bear the scrutiny of the suitability investigation conducted by the Louisiana State Police.

. The mail fraud statute proscribes the use of the mails in furtherance of "any scheme or artifice to defraud, or for obtaining ... property by means of false or fraudulent pretenses, representations, or promises, ...” [emphasis added]

.18 U.S.C. § 371 provides:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this *1192 title or imprisoned not more than five years, or both.
If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemean- or.

. 26 U.S.C. § 7206 provides in pertinent part as follows:
Any person who—
(2) Aid or assistance. Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; ... shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

. Respondent had originally been denied bail pending appeal and had served 28 months in prison when the United States Supreme Court granted certiorari in his case. Thereafter, the district court granted respondent’s motion to be released from prison pending the completion of the appeal process. In light of the time respondent had already served in prison, and considering his accumulated good time, he was not required to serve any additional time in prison following re-sentencing.

. Standard 5.11 suggests that disbarment is generally appropriate when a lawyer engages in serious criminal conduct, a necessary element of which includes misrepresentation or fraud, or attempts or conspires or solicits another to commit such conduct.

. The committee noted the following cases: In re: Palmer, 02-1780 (La.12/4/02), 835 So.2d 410 (attorney's conduct in creating and submitting fraudulent material to insurance regulators to further an insurance scheme warranted disbarment; attorney pleaded guilty to engaging in conspiracy to commit an offense in violation of 18 U.S.C. § 371); In re: Nevitte, 02-1962 (La.9/30/02), 827 So.2d 1135 (attorney disbarred based upon his conviction of conspiracy to commit bank fraud and mail fraud; mitigating factors present included absence of prior disciplinary record and the imposition of other penalties or sanctions, but aggravating factors of dishonest or selfish motive, failure to admit the wrongful nature of the conduct, and substantial experience in the practice of law were present); In re: Schneider, 97-2457 (La.1/30/98), 707 So.2d 38 (attorney disbarred for conviction of mail fraud, conspiracy to commit mail fraud, intentionally submitting false statements to a banking institution, and willfully making and subscribing a false tax return in connection with Charter Title Company); and In re: King, 94-0686 (La.11/30/94), 646 So.2d 326 (attorney disbarred for conviction of mail fraud in connection with creating fraudulent bank documents specifically designed to mislead regula *1195 tory officials concerning the financial state of Champion Insurance Company).

. The district court considered the case outside the traditional sentencing guidelines because the case did not involve drug dealers or organized crime. Ordinarily, Ferrouillet would have faced 41-51 months in prison under the sentencing guidelines; however, because the case fell outside the "heartland” of money laundering cases, Ferrouillet was fined $10,000 and sentenced to serve one year in a halfway house, followed by five years of supervised probation.