JjPER CURIAM.*
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, John Christopher Martin, an attorney licensed to practice law in Louisiana but currently on interim suspension.
UNDERLYING FACTS
' On Sunday, July 1, 2001, respondent had a lengthy conversation' with his ex-wife regarding visitation with his children.[1] Following the conversation, respondent left his ex-wife’s home and went to a bar, where he spent the next five hours drinking tequila and ingesting cocaine. In the *179 early morning hours of Monday, July 2, 2001, respondent returned to his ex-wife’s house. Respondent apparently intended to talk to her, but passed out on the lawn before doing so.
Neighbors observed respondent on the lawn and contacted the police. When the police arrived, respondent was sitting in or near his truck. Respondent, who was apparently startled by the arrival of the police officers, retrieved a loaded .38 caliber revolver from his truck and moved toward a swing on the front porch of his ex-wife’s home. Once there, he began talking to his ex-wife and a friend on his cell phone. By |;>that time, a SWAT team arrived and evacuated respondent’s ex-wife and children from the house. A standoff between respondent and the police officers then ensued.
Approximately ninety minutes later, respondent left the porch and started to walk toward his truck, with his gun in his hand. The officers ordered him to drop the gun. Respondent refused to do so and raised his arm. As he did so, one of the officers struck respondent with a Taser device. According to respondent, the electric jolt from the Taser caused his hand to jerk, and as a result, his gun fired in front of him. A police officer returned fire with a 12 gauge shotgun, striking respondent once in the abdomen. He was then taken into custody.[2]
On September 20, 2001, respondent pleaded guilty under La.Code Crim. P. art. 893 to five felony counts of aggravated assault upon a peace officer with a firearm.[3] The trial court sentenced him to serve five years at hard labor on each count, all counts to run concurrently, with credit for time served. This sentence was suspended and respondent was placed on active probation for five years,[4] with the condition that he receive appropriate mental health treatment, submit to drug testing, and stay away |3from his former wife and children. Respondent also agreed to move out of state for two years. By orders of the Orleans Parish Criminal District Court dated February 4, 2002 and July 26, 2002, respondent was permitted to travel to Louisiana during the period of his probation.[5] The July 26, 2002 order also permitted respondent to visit with his children at such times as his former wife may specify in writing.
DISCIPLINARY PROCEEDINGS

Formal Charges

Following his conviction, respondent and the ODC filed a motion in this court seek *180 ing to place respondent on interim suspension. We granted that motion on October 24, 2001. In re: Martin, 01-2703 (La.10/24/01), 799 So.2d 1134. Thereafter, the ODC filed one count of formal charges against respondent. The charges alleged that his conviction constituted a violation of Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Respondent answered the formal charges. Although he admitted his conviction, he requested a hearing in mitigation.

Hearing Committee Recommendation

At the hearing, the parties stipulated to respondent’s conviction. However, respondent emphatically denied that he intended to shoot his gun, or that he intended to kill or injure anyone during the standoff, including his ex-wife, his children, or the |4police officers. Rather, respondent maintained that he was deeply depressed at the time and intended to commit “suicide by cop” by getting the police officers to shoot him.[6]
The hearing committee recognized that the stipulated facts establish by clear and convincing evidence that respondent violated the Rules of Professional Conduct as alleged in the formal charges. Accordingly, the primary issue considered by the committee was the sanction to be imposed for respondent’s conduct.
Relying on Standard 5.12 of the ABA’s Standards for Imposing Lawyer Sanctions,[7] as well as jurisprudence from this court, the committee determined that the baseline sanction in this matter is a suspension from the practice of law. The committee found that no aggravating factors are present, but identified numerous mitigating factors, including the absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, timely good faith effort to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, physical or mental disability or impairment, imposition of other penalties or sanctions, and remorse.
[fiConsidering all the circumstances, the committee recommended that respondent be suspended from the practice of law for a period of two years.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.

*181
Disciplinary Board Recommendation

The disciplinary board acknowledged that in light of respondent’s conviction of a serious crime, and considering the stipulated facts and rule violations, the only issue to be determined is the appropriate sanction.
The board found that by violating Rules 8.4(a), 8.4(b), and 8.4(d), respondent violated duties owed to the public and to the legal system. Respondent’s conduct was knowing, if not intentional. It determined the potential for harm was great, but that respondent was the only party who suffered serious harm as a result of the incident. Nonetheless, the board recognized that the incident received local media coverage, and that such adverse publicity causes harm to the public’s perception of the legal profession. The board agreed with the hearing committee that the baseline sanction for respondent’s conduct is a suspension from the practice of law.
The board concurred in the hearing committee’s finding that no aggravating factors are present in this case, and likewise concurred in its assessment of the mitigating factors, with the exception of mental disability, as to which no medical evidence was introduced. Nevertheless, the board specifically recognized that respondent’s conduct on July 2, 2001 was the product of personal or emotional problems stemming from depression and complicated by substance abuse. The board also reiterated that there was no loss of life or other serious injury except to respondent himself.
1 (Rased on this reasoning, the board adopted the hearing committee’s recommendation that respondent be suspended from the practice of law for two years. The board further recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation; however, the court on its own motion docketed the matter for briefing and oral argument in accordance with Supreme Court Rule XIX, § 11(G)(1)(a).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990).
It is undisputed that respondent has been convicted of five counts of aggravated assault upon a peace officer with a firearm. The crime of which respondent was convicted is a felony under Louisiana law and is of sufficient gravity to warrant professional discipline under this court’s rules. Accordingly, the sole issue presented for our consideration is the appropriate sanction for this misconduct.
In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
There is not much jurisprudence from this court dealing with misconduct similar *182 to respondent’s. However, we find some guidance from our opinions in In re: Estiverne, 99-0949 (La.9/24/99), 741 So.2d 649, and In re: Brown, 95-0817 (La.5/21/96), 674 So.2d 243. We will discuss these cases in turn.
In Estíreme, the respondent became involved in an altercation with the attorney for the defendant during the course of a deposition. At some point, the attorney for the defendant advised the respondent that the two of them could “step outside” and settle the matter “man to man.” A few minutes later, the respondent reappeared in the office with an unloaded gun and allegedly threatened to kill the attorney for the defendant. In our opinion, we concluded the respondent’s use of a dangerous weapon created a clear potential for harm. As a result, we suspended the respondent from the practice of law for one year and one day.
In Brown, the respondent was convicted of negligent homicide arising out of the death of her lover. The respondent asserted that she did not intend to inflict any injury on the victim and merely brandished the gun to “scare” her. Although we agreed the respondent may not have intended to kill the victim, we observed that “[w]hen a gun is drawn against another person, ... the risk that someone could be seriously injured or killed is always present.” Focusing on the gravity of the harm and the lack of mitigating factors, we disbarred the respondent.
Distilling the essence of Estíreme and Brown, it is clear this court has emphasized the harm, both potential and actual, which follows when an attorney is | sinvolved in a crime involving a dangerous weapon. In Estíreme, we found that an attorney’s use of an unloaded weapon, even though presenting no actual danger to other persons, created sufficient potential harm to justify a suspension from the practice of law. In Brown, we found the attorney’s lack of intent to cause harm by the use of the firearm did not excuse the attorney’s use of that weapon in an inappropriate manner, especially where death or serious harm resulted.
In the instant case, respondent’s decision to wield a loaded revolver in front of his ex-wife’s house while in an intoxicated state created a very high possibility of harm. Despite respondent’s lack of intent to cause harm to anyone other than himself, the fact remains that his gun discharged and could have easily injured one of the police officers or an innocent bystander. As in Brown, the seriousness of respondent’s actions simply cannot be overstated. Consequently, we conclude the baseline sanction for this conduct is disbarment.[8]
We find several compelling mitigating factors are present, including the absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, timely good faith effort to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, good character or reputation, imposition of other penalties or sanctions, and remorse. By all accounts, respondent’s actions were the result of his severe depression, combined with the adverse effects of alcohol and cocaine. While these factors in no way excuse respondent’s actions, we conclude *183 they justify a downward deviation from the baseline sanction of disbarment.
[ [(Accordingly, we will suspend respondent from the practice of law for a period of three years.[9]
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that John Christopher Martin, Louisiana Bar Roll number 22502, be suspended from the practice of law in Louisiana for a period of three years. This suspension shall be retroactive to October 24, 2001, the date of respondent s interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, J., concurs.

 Retired Judge Fred C. Sexton, Jr., assigned as Justice ad hoc, sitting for Associate Justice Catherine D. Kimball, recused.

. Respondent’s ex-wife raised concerns that it might not be safe to allow respondent to visit with the children because he had been suffering from depression. ;

. Respondent was taken to the hospital in critical condition. He subsequently underwent surgery to remove his gall bladder and a portion of his liver, and he sustained nerve damage to his right hand.

. The crime to which respondent pleaded guilty is defined by La. R.S. 14:37.2, which provides:
A. Aggravated assault upon a peace officer with a firearm is , an assault committed upon a peace officer who is acting in the course and scope of his duties with a firearm.
B. For purposes of this Section, "firearm" is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.
C.Whoever commits an aggravated assault upon a peace officer with a firearm shall be fined not more than five thousand dollars, or imprisoned for not less than one year nor more than ten years, with or without hard labor, or both.

. Respondent received an early termination of probation by order of the Orleans Parish Criminal District Court dated January 30, 2004.

. Respondent's former wife was consulted in connection with his requests for permission to return to Louisiana, and she acquiesced in those requests.

. Respondent testified:
And I never had any interest in harming anyone else in any way. It was always selfishly about me. I wanted to die, and I didn’t have the guts to do it myself at that point, and I thought, “Okay, they’ll do it for me.” And that was exceedingly selfish to make somebody do that kind of thing. But that's how deeply depressed I was.

. Under Standard 5.12, a suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice law. Cf. Standard 5.11, which provides for disbarment when: (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer’s fitness to practice law.

. We acknowledge that under the ABA's Standards for Imposing Lawyer Sanctions, the baseline sanction for criminal conduct other than that described in Standard 5.11 is generally a suspension from the practice of law. However, the ABA Standards are not intended to be applied in a rigid, inflexible manner. Rather, the standards are helpful guidelines that supplement the rules and decisions of this court.

. Because respondent s suspension is longer than one year, he will be required to apply for reinstatement pursuant to Supreme Court Rule XIX, § 24. While we decline to impose any conditions on reinstatement at this time, we caution respondent that if and when he seeks reinstatement, we will give very careful consideration to a determination of whether he has submitted evidence demonstrating that he has addressed the personal and emotional problems, depression, and substance abuse that are at the root of the misconduct in this case.