ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
|! This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Elvin A. Sterling, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime. In re: Sterling, 04-2699 (La.11/17/04), 886 So.2d 1123.
UNDERLYING FACTS

Count I

At approximately 11:00 p.m. on Thursday, June 26, 2003, respondent went to the Baton Rouge apartment of Shannon Harrison, his former fiancée, so that he could retrieve Ms. Harrison’s engagement ring and the keys to a Ford Expedition he had given to her. Respondent called Ms. Harrison’s cell phone and her home phone and knocked on the doors and windows of the apartment, but Ms. Harrison would not respond. Respondent then kicked in the door and forced his way inside the apartment. Respondent had also brought two friends with him who eventually entered the apartment as well. Upon discovering Ms. Harrison in her bedroom with another man, respondent grabbed her by the arms and pushed and shoved her around the apartment. Frightened, Ms. Harrison made a telephone call to a friend, who summoned the police. When the East Baton Rouge Parish Sheriffs Office arrived at Lthe scene, respondent was taken into custody and charged with unauthorized entry of an inhabited dwelling and simple battery.[1]
At 1:00 a.m. on Friday, June 27, 2003, respondent sent a telephone text message to Ms. Harrison, telling her that he was already out of jail. He continued sending text messages throughout the weekend, berating Ms. Harrison for “cheating” on him and implying that he was able to influence the outcome of any criminal proceeding against him.[2] On July 4, 2003, respondent sent Ms. Harrison a text message saying simply, “you’ll probably have to move again.”
After receiving these messages, Ms. Harrison applied for a restraining order against respondent. When respondent learned of Ms. Harrison’s filing, he applied for a restraining order against her. On July 14, 2003, Judge Suzan Ponder of the Baton Rouge City Court issued mutual restraining orders against respondent and Ms. Harrison.
*410 In August 2004, respondent was charged by felony bill of information with unauthorized entry of an inhabited dwelling, a violation of La. R.S. 14:62.3.[3] On laSeptember 23, 2004, respondent pled guilty as charged. The State recited the following factual basis for respondent’s guilty plea:
Your Honor, if this matter were to go to trial, the state would show that on the evening of June 26th, 2003, the victim in this matter, S. Harrison was at her home at 5120 Buttercreek, which is located in East Baton Rouge Parish. While she was at home, someone started to bang on the windows and doors and wanted into her apartment. It turned out that the person was the defendant, Elvin Sterling, who was a former boyfriend of hers. She would not let him in and he broke down the door, kicked in the door and entered. He also had brought two friends with him who eventually entered the apartment. Once inside he slapped and committed other batteries upon Ms. Harrison. She was very scared and was able to make a phone call to a friend who called the police. The police arrived, and Mr. Sterling, Marlon Moore and Derrick Smith were apprehended and arrested.
Respondent’s counsel then stated to the court, and respondent agreed on the record, that “on the date alleged by the state that he committed unauthorized entry in that he did enter without the authority into the residence of Ms. Harrison.”
The trial court, Judge Wilson Fields presiding, accepted respondent’s guilty plea and sentenced him in conformity with the plea agreement. Judge Fields deferred the imposition of sentence for three years pursuant to the provisions of La. Code Crim. P. art. 893 and placed respondent on active supervised probation for that period. Judge Fields imposed nine special conditions of probation, including the requirement that respondent (1) pay a $750 fíne and court costs, (2) have no contact with the victim, (3) pay $6,000 in restitution through the District Attorney’s Office, (4) perform 50 hours of community service work, (5) pay $500 to the Baton Rouge Women’s Shelter, and (6) obtain a mental health evaluation. Respondent subsequently completed the terms of his probation in a satisfactory manner. In March |42007, Judge Fields terminated respondent’s probation and dismissed the proceedings against him in accordance with La.Code Crim. P. art. 893.

Count II

In November 2001, Dedria Payne retained respondent to handle a personal injury matter. Upon respondent’s interim suspension in November 2004, he was required by Supreme Court Rule XIX, § 26 to notify all clients, adverse parties, and opposing counsel of the order of the court and his disqualification to act as a lawyer after the effective date of the order.[4] *411 However, respondent did not notify Ms. Payne of his interim suspension. Rather, by letter dated January 11, 2005, Angela Elly, an attorney employed by respondent’s law firm, informed Ms. Payne that respondent “is not actively practicing law and will not be available for any legal matters until a later date.” Ms. Elly’s letter further advised Ms. Payne that her personal injury matter was “now being headed” by another attorney within the firm of Sterling <& Associates and that Ms. Payne should contact respondent’s office if she had “any questions or concerns.” In June 2005, Ms. Payne filed a complaint against respondent with the ODC. Among other issues raised in the complaint, Ms. Payne stated that she did not approve the reassignment of her matter to another lawyer in respondent’s firm.
| ¡¡Count III
In September 2002, respondent hired Shonda Guillory to work as a secretary in his law firm. On January 8, 2004, Ms. Guillory was involved in an automobile accident with her minor child. Respondent agreed to handle the personal injury matter. In March 2004, Ms. Guillory’s employment with the law firm was terminated. By letter dated July 6, 2004, Ms. Guillory terminated respondent’s representation in the personal injury matter and requested a copy of her file. Respondent failed to comply with Ms. Guillory’s request.
In August 2004, Ms. Guillory’s new counsel, Danny Woods, sent two letters to respondent notifying him of the representation and requesting a list of expenses which had been incurred by respondent’s firm. On October 14, 2004, Mr. Woods made another request for Ms. Guillory’s file. By letter dated October 26, 2004, respondent acknowledged the request and assured Mr. Woods that the “file is being sent under separate cover along with a list of our expenses.” Once again, however, respondent failed to turn over the file. Mr. Woods made yet another written request for the file in December 2004, to which he received no response. On January 7, 2005, Mr. Woods filed a petition for damages on behalf of Ms. Guillory, still without the benefit of the materials contained in her file with respondent’s office. Mr. Woods ultimately did not receive the file until sometime after the suit was filed.
DISCIPLINARY PROCEEDINGS
In 2006, the ODC filed three counts of formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.4 (failure to communicate with a client), 1.16(d) (obligations upon termination of the [(¡representation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(e) (stating or implying an ability to influence improperly a judge, judicial officer, governmental agency, or official or to achieve results by means that violate the Rules of Professional Conduct or other law).
Respondent, through counsel, answered the formal charges and admitted his criminal conviction, as well as his violation of Rules 8.4(a) and 8.4(b) of the Rules of *412 Professional Conduct in connection therewith. However, respondent denied that in sending text messages to Ms. Harrison he implied an ability to influence the outcome of any possible criminal or civil proceedings. Respondent also admitted the factual allegations of Count II, with the exception of the allegation that his law firm lacked authority to reassign Ms. Payne’s matter to another lawyer in the firm. Rather, respondent suggested that the retainer agreement executed by Ms. Payne gave both he and his law firm the right to represent her. Finally, respondent admitted the factual allegations of Count III, but denied any wrongdoing with respect to the handling of Ms. Guillory’s file. Respondent denied the remainder of the charged violations of the Rules of Professional Conduct.

Hearing Committee Report

This matter proceeded to a formal hearing on the merits. After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:
|7Count I — On the evening of June 26, 2003, respondent and two friends went to the apartment of Shannon Harrison, with whom respondent had been involved in a relationship for a number of years. Respondent had been informed by a private investigator that Ms. Harrison was with another man on this particular evening. Upon arriving, respondent forced his way into Ms. Harrison’s apartment where he remained after being asked to leave. Respondent was arrested and eventually pled guilty to the charge of unauthorized entry of an inhabited dwelling. He was placed on probation and has met all of the conditions of probation imposed by the court.
Respondent sent a number of text messages to Ms. Harrison in the days after his arrest. The committee found that although several of the messages are rude and disrespectful, they did not contain threats of use of the legal process or any influence on possible civil or criminal proceedings.
Based on these factual findings, the committee determined that respondent violated Rules 8.4(a), 8.4(b), and 8.4(d) of the Rules of Professional Conduct. The committee did not find that the text messages sent by respondent rose to the level of a violation of Rule 8.4(e).
Count II — In November 2001, Dedria Payne retained respondent to handle a personal injury matter. On November 17, 2004, respondent was placed on interim suspension. Pursuant to Supreme Court Rule XIX, § 26, respondent was advised of the requirement to notify all clients, co-counsel, and opposing parties of the court’s order and his disqualification to act as a lawyer. Per a letter dated January 11, 2004, respondent’s associate, Angela M. Elly, sent a certified mail notice to Ms. Payne that her legal matter had been transferred to new counsel within the firm of Sterling & Associates. This letter did not contain any mention that respondent had been interimly suspended.
|sBased on these factual findings, the committee determined that respondent violated Rules 1.2, 1.4, and 8.4(a) of the Rules of Professional Conduct by failing to inform Ms. Payne of his interim suspension and allowing her case to be assigned to another attorney in his firm, who proceeded to settle the personal injury case. The committee noted that after respondent’s interim suspension “he virtually abandoned his practice leaving it in the hands of others”; however, the committee did not find that this conduct was sufficient to constitute a violation of Rule 8.4(c).
Count III — Shonda Guillory was a former employee of respondent’s law firm who hired respondent and his firm to rep *413 resent her in a personal injury case. On July 6, 2004, Ms. Guillory terminated the firm’s representation and made a written request for a complete copy of her file. Subsequently, Ms. Guillory retained another attorney, Danny Woods, to represent her in the personal injury matter. On October 14, 2004, Mr. Woods made a written request for a copy of Ms. Guillory’s file. On October 26, 2004, respondent made a written acknowledgment of Mr. Woods’ request and stated that he would have the file delivered. On December 28, 2004, Mr. Woods again requested a copy of the file from respondent. On January 7, 2005, Mr. Woods filed a petition for damages on behalf of Ms. Guillory without the benefit of having the complete file from respondent’s office.
Based on these factual findings, the committee determined that respondent violated Rules 1.16(d) and 8.4(a) of the Rules of Professional Conduct by failing to timely and promptly provide Ms. Guillory a copy of her file upon termination of the representation. The committee did not find a violation of Rule 8.4(c).
The committee determined that respondent violated duties owed to his clients and the profession. Respondent’s actions in Count I were intentional, leading to his felony conviction. In Counts II and III, respondent’s conduct was negligent. The | ncommittee found that respondent’s felony conviction did not involve harm to a client. With respect to Count II, respondent’s negligence in failing to inform Ms. Payne that he was suspended from the practice of law may have prevented her from seeking the assistance of another attorney; however, the committee found no evidence of any actual harm to Ms. Payne. Similarly, in Count III, Ms. Guillory was inconvenienced by respondent’s failure to provide a copy of her file to her new attorney, but there was no evidence of any actual harm.
The only aggravating factor found by the committee is multiple offenses. In mitigation, the committee recognized the following factors: absence of a prior disciplinary record, imposition of other penalties or sanctions, remorse, and inexperience in the practice of law (admitted 2000).
Under the circumstances presented, and considering the absence of any actual harm caused by respondent’s misconduct, the committee recommended that respondent be suspended from the practice of law for two years, with all but one year deferred, followed by a two-year period of supervised probation.
The ODC filed an objection to the hearing committee’s report and recommended sanction.

Disciplinary Board Recommendation

After review, the disciplinary board found that the hearing committee’s factual findings are not manifestly erroneous and adopted same. .The board likewise adopted the committee’s determinations concerning the alleged violations of the Rules of Professional Conduct. The board specifically agreed with the committee that respondent did not violate Rule 8.4(e) by sending telephone text messages to Ms. Harrison after his arrest. The board reasoned that while the messages were | ^‘intimidating and boastful of Respondent’s ability to navigate the legal process,” the ODC failed to prove that the messages clearly implied an ability to influence a judge, judicial officer, governmental agency, or official. The board also rejected the ODC’s argument that the committee erred in failing to find a violation of Rule 8.4(c) with respect to respondent’s failure to specifically notify Ms. Payne of his interim suspension, finding respondent’s actions, or inactions, did not rise to a level constituting dishonesty or misrepresentation.
*414 The board determined that respondent violated duties owed to his clients, the public, and the profession. Respondent’s conduct was intentional as to Count I and negligent as to Counts II and III. Respondent’s misconduct in Count I involved significant harm to Ms. Harrison. In Count II, respondent’s negligence in failing to inform Ms. Payne of his interim suspension deprived her of the ability to make an informed decision as to whom she wanted to represent her in her legal matter. As to Count III, Ms. Guillory was injured by respondent’s failure to have a copy of her entire file promptly provided to her new attorney. The filing of her lawsuit was delayed because her new attorney was waiting to receive the file, and he ultimately had to file suit without the benefit of the complete file. Relying on the ABA’s Standards for Imposing Latuyer Sanctions, the board determined that the baseline sanetion for respondent’s misconduct ranges from a reprimand to suspension.
The only aggravating factor found by the board is multiple offenses. In mitigation, the board recognized the following factors: absence of a prior disciplinary record, imposition of other penalties or sanctions, remorse, and inexperience in the practice of law.
Considering the court’s prior jurisprudence involving misconduct similar to respondent’s, the board agreed that suspension is warranted. Sanctions in cases Indealing with attorneys who have engaged in violent conduct range from a year and a day suspension to disbarment.[5] Additionally, two other counts of misconduct have been proven by the ODC. However, the board found that deferral of a portion of the suspension, as recommended by the committee, is not justified because of the very serious nature of the misconduct.
*415 Based on this reasoning, the board recommended that respondent be suspended from the practice of law for twenty-four months. A majority of the board recommended that the period of suspension commence running from the date of finality of the court’s judgment imposing discipline. Four board members dissented and would make the period of suspension retroactive to the date of respondent’s interim suspension.
1 ^Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In his brief to this court, respondent does not contest either the facts or rule violations found by the hearing committee and disciplinary board; rather, his argument is limited to the appropriate length of his suspension and whether the suspension should be retroactive to the date of his interim suspension. Similarly, the ODC does not contest the finding that it did not prove some of the alleged rule violations by clear and convincing evidence. Accordingly, the only issue before us is the appropriate sanction to be imposed for respondent’s misconduct. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of |13the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record reflects that respondent has been convicted of a felony criminal offense. He also failed to properly notify his clients of his interim suspension, failed to return a client’s file after he was placed on interim suspension, and transferred a client matter to another attorney without the consent of the client. By engaging in this misconduct, respondent violated duties owed to his clients, the public, and the profession. His conduct, which caused actual harm in each instance, was intentional as to Count I and negligent as to Counts II and III. The applicable baseline sanction in this matter is a suspension from the practice of law.
We find that several mitigating circumstances are supported by the record, including the following: absence of a prior disciplinary record, inexperience in the practice of law, character and reputation, imposition of other penalties or sanctions, and remorse. The only aggravating factor present is multiple offenses.
Taking into account all of the interests to be served by the lawyer disciplinary process, we find the appropriate sanction in this matter is a two-year suspension *416 from the practice of law, as recommended by the disciplinary board. However, we decline to adopt the board’s recommendation that the suspension commence to run from the date of finality of the instant judgment. Currently, respondent has been on interim suspension for more than four years. To add another two years to this already lengthy 114suspension would not be appropriate for the misconduct in this matter, and would be unduly punitive.[6]
Accordingly, we will suspend respondent from the practice of law for a period of two years, retroactive to November 17, 2004, the date of his interim suspension.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Elvin A. Sterling, Jr., Louisiana Bar Roll number 27096, be and he hereby is suspended from the practice of law for two years, retroactive to the date of his interim suspension ordered in In re: Sterling, 04-2699 (La.11/17/04), 886 So.2d 1123. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent’s two friends were charged only with the unauthorized entry of Ms. Harrison’s home, as they did not participate in the battery inflicted upon Ms. Harrison by respondent.

. For example, respondent sent Ms. Harrison a message on June 28, 2003 stating:
I’m going 2 serve a civil warrant n take the truck b/c i don’t think u love me. I can play the same game w/ lots of BR lawyers. I know what u did today.

. La. R.S. 14:62.3 provides:
A. Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
B. Whoever commits the crime of unauthorized entry of an inhabited dwelling shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than six years, or both.

. Supreme Court Rule XIX, § 26(A) provides in pertinent part as follows:
Recipients of Notice; Contents. Within thirty days after the date of the court order imposing discipline, ... a respondent who is ... placed on interim suspension ... shall notify or cause to be notified by registered or certified mail, return receipt requested,
(1) all clients being represented in pending matters;
(2) any co-counsel in pending matters; and
*411 (3) any opposing counsel in pending matters, or in the absence of opposing counsel, the adverse parties, of the order of the court and that the lawyer is therefore disqualified to act as lawyer after the effective date of the order....

. The board cited three such cases. In In re: Estiverne, 99-0949 (La.9/24/99), 741 So.2d 649, the respondent became involved in an altercation with opposing counsel during a deposition. At some point, opposing counsel suggested to the respondent that the two of them "step outside” and settle the matter "man to man.” The respondent left the office and reappeared a few minutes later with an unloaded gun, allegedly threatening to kill opposing counsel. Finding the respondent's use of a dangerous weapon created a clear potential for harm, the court suspended the respondent from the practice of law for one year and one day.
In In re: Martin, 04-0170 (La.12/1/04), 888 So.2d 178, an intoxicated respondent armed himself with a gun during a domestic disturbance at the home of his ex-wife. When he refused to obey orders to drop the gun, the police struck the respondent with a Taser device, which caused his gun to discharge. The respondent was ultimately convicted of five felony counts of aggravated assault on a peace officer with a firearm. This court acknowledged that the respondent had no intent to cause harm to anyone other than himself, but pointed out that the gun discharged and could have easily injured one of the police officers or an innocent bystander. Emphasizing the "very high possibility of harm” created by the respondent's actions, the court concluded that the applicable baseline sanction was disbarment. However, in light of the numerous mitigating factors present, the court deviated downward to impose a three-year suspension.
In In re: Brown, 95-0817 (La.5/21/96), 674 So.2d 243, the respondent was convicted of negligent homicide arising out of the death of her lover. The respondent asserted that she did not intend to inflict any injury on the victim and merely brandished the gun to "scare” her. Although the court agreed that the respondent may not have intended to kill the victim, the court observed that "[wjhen a gun is drawn against another person, ... the risk that someone could be seriously injured or killed is always present.” Focusing on the gravity of the harm and the lack of mitigating factors, the court disbarred the respondent.
The board noted that like Martin and Brown, domestic violence was the focus of the incident in the instant matter, though fortunately, the result of respondent’s violent conduct was not as severe as in those two cases. Rather, it was closer in severity to that seen in Estiveme.

. Supreme Court Rule XIX, § 24(A) provides, "[i]n matters where a lawyer who has been placed on interim suspension and is then suspended for the same misconduct that was the ground for the interim suspension, at the court’s discretion, the lawyer’s term of suspension may be applied retroactively to the effective date of the interim suspension.” [Emphasis added] Historically, this court generally has chosen to exercise its discretion in order to make suspensions run retroactive to the date of prior interim suspensions. See, e.g., In re: Lacobee, 03-2010 (La.2/20/04), 866 So.2d 237; In re: Gaudin, 00-2966 (La.5/4/01), 785 So.2d 763; In re: Feirouillet, 99-3434 (La.6/30/00), 764 So.2d 948; In re: Edwards, 99-1783 (La.12/17/99), 752 So.2d 801. We see nothing in the record of the instant case which would cause us to not exercise our discretion in order to make the suspension retroactive to the date of the interim suspension.