*427 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
| ¡This disciplinary matter arises from five separate sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Erik Stafford Pittman, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Pittman, 08-2658 (La.11/19/08), 994 So.2d 1277.
UNDERLYING FACTS AND PROCEDURAL HISTORY

07-DB-031

The Wallick Matter

In May 2005, respondent was appointed curator ad hoc to locate Jerald Wallick, an out-of-state resident whose minor son had been removed from the custody of his mother. After Mr. Wallick was located, respondent was appointed to represent him in the custody proceeding. Respondent spoke to Mr. Wallick prior to a November 2005 hearing in the case, but thereafter he failed to communicate with Mr. Wallick regarding the status and objectives of the case and failed to return Mr. Wallick’s telephone calls and messages. In December 2005, Mr. Wallick informed the court of the difficulties he had experienced in communicating with respondent. In turn, the court informed respondent of Mr. IgWallick’s dissatisfaction with the representation. However, respondent’s lack of communication with Mr. Wallick continued.
In February 2006, Mr. Wallick filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena for his sworn statement. Despite being personally served with the subpoena, respondent failed to appear for the sworn statement as scheduled.
Meanwhile, respondent continued to neglect the custody matter and continued in his failure to communicate with Mr. Wal-lick. Respondent also failed to appear for a review hearing in the custody matter. In September 2006, respondent became ineligible to practice law for failing to pay the disciplinary assessment, but he nevertheless did not withdraw from the representation of Mr. Wallick.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16(a) (failure to withdraw from the representation of a client when the representation will result in violation of the rules of professional conduct or other law), 1.16(d) (obligations upon termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

07-DB-069

The Brooks Matter

In February 2004, Dorothy Brooks retained respondent to represent her in a sexual harassment suit. In April 2004, respondent advised Ms. Brooks that he had been contacted by opposing counsel to schedule a meeting. One year later, Ms. [aBrooks had heard nothing further and *428 contacted respondent for an update regarding the status of her case. According to Ms. Brooks, respondent advised her that “these things take time.” In late 2006, Ms. Brooks contacted respondent again for an update and received the same reply.
Thereafter, respondent failed to communicate with Ms. Brooks and failed to return her telephone calls. He also took no action regarding the sexual harassment claim and failed to file suit on behalf of Ms. Brooks, causing her claim to be lost.
Sometime after September 2006, Ms. Brooks discovered that respondent had been declared ineligible to practice law. She twice attempted to contact respondent to request her file, to no avail.
In July 2007, Ms. Brooks filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.16(d), 8.1(c), and 8.4(a).
After the formal charges were filed in 07-DB-031 and 07-DB-069, respondent filed an answer admitting to the allegations and requesting a hearing in mitigation. The two matters were then consolidated by order of the hearing committee chair before proceeding to a mitigation hearing conducted by the committee in January 2008.
Prior to the hearing, respondent and the ODC entered into a joint stipulation of facts and rule violations. In this document, respondent stipulated to the facts as alleged by the ODC and admitted that he violated the Rules of Professional Conduct as charged in the Wallick and Brooks matters. During the mitigation hearing, respondent testified that his ability to concentrate on his law practice had been impacted by the death of his father, the health problems of his mother, and the | conclusion of a long-term relationship with his girlfriend. However, respondent admitted he had not sought counseling to assist him with these issues other than visiting his priest on one occasion. In any event, respondent testified that he did not intend to practice law for a period of time because he had decided to enlist in the United States Army in order to “straighten [his] life out” and “get out of the situation” he was in.
After considering the evidence and testimony presented at the hearing, the hearing committee accepted the rule violations as stipulated to by the parties and recommended that respondent be suspended from the practice of law for two years. Neither respondent nor the ODC filed an objection to the hearing committee’s report.

08-DB-08Í

The Tagliarino Matter

In October 2005, Kimberly Tagliarino paid respondent $750 to handle her husband’s succession. Respondent prepared pleadings to open the succession, but he did not file them and failed to communicate with Ms. Tagliarino.
In June 2008, Ms. Tagliarino filed a complaint with the ODC, setting forth the great stress and financial hardship she had suffered as a result of respondent’s three years of inaction. In response to the complaint, respondent stated that Ms. Tagliari-no would receive a refund of “the fee advanced with interest.” However, as of the date the formal charges were filed, Ms. Tagliarino had not received the promised refund.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules *429 1.3, 1.4, 1.5(f)(5) (failure to refund an unearned fee), and 8.4(a).
| ¡¡Respondent failed to answer the formal charges filed in 08-DB-084. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
After considering the ODC’s deemed admitted submission, the hearing committee found that respondent accepted a $750 flat fee from Ms. Tagliarino to complete her husband’s succession. Respondent prepared pleadings to open the succession, but for some reason, he never filed the pleadings, nor did he refund the fee to Ms. Tagliarino. Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. For his misconduct, the committee recommended respondent be suspended from the practice of law for thirty days, fully deferred, subject to a six-month period of supervised probation with the condition that he make restitution to Ms. Tagliarino.
Neither respondent nor the ODC filed an objection to the hearing committee’s report.

10-DB-0If3

The Lipoma Matter

In June 2007, Felix Lipoma paid respondent $1,995 to draft and complete an estate trust. In early 2008, Mr. Lipoma met with respondent to review a rough draft of the trust documents. Because the draft contained errors, respondent agreed to make the necessary corrections and finalize the documents at a later date. Thereafter, respondent failed to complete the trust, failed to communicate with Mr. | ¡-Lipoma, and failed to refund the unearned portion of the fee. Respondent also failed to advise Mr. Lipoma of his November 19, 2008 interim suspension. In 2009, Mr. Lipoma attempted to contact respondent and left messages for him, to no avail. Mr. Lipo-ma did not learn that respondent was suspended from the practice of law until 2010.
In March 2010, Mr. Lipoma filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.5(f)(5), 8.1(c), and 8.4(a).

10-DB-0U

The Miley Matter

In March 2007, respondent filed suit against BellSouth Telecommunications on behalf of his client, Rankin Miley, for injuries Mr. Miley sustained when he tripped over a cable extending across the ground from a telephone pole/junction box under repair. In September 2007, respondent issued a $200 check to the Livingston Parish Clerk of Court in the matter, but the check was returned unpaid due to insufficient funds in respondent’s bank account. Respondent took no further action of record in the case and allowed it to become abandoned.
During the course of the representation, respondent failed to properly communicate with Mr. Miley about the status of the case. According to Mr. Miley, he repeatedly attempted to contact respondent, but was mostly unsuccessful. On one occasion when Mr. Miley finally “caught” respondent at home, respondent advised that he had joined the military and returned Mr. Miley’s documents to him at that time.
*430 |7In August 2010, Mr. Miley filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, 8.1(c), 8.4(a), and 8.4(d).
Respondent failed to answer the formal charges filed in 10-DB-043 and 10-DB-074, which were consolidated for consideration by the hearing committee. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence. Once again, respondent filed nothing for the hearing committee’s consideration on the issue of sanctions.
After considering the ODC’s deemed admitted submission, the hearing committee determined that respondent failed to perform the work he had agreed to do for Mr. Lipoma, failed to refund the unearned portion of Mr. Lipoma’s fee, and failed to inform Mr. Lipoma that he had been suspended from the practice of law. Respondent also allowed Mr. Miley’s suit to become abandoned and did not inform Mr. Riley he had joined the armed forces until Mr. Riley “cornered” him at home. Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. For his misconduct, which the committee characterized as “a total disregard for his oath as a lawyer and his commensurate obligations to his clients,” the committee recommended respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s report.
After the issuance of the three hearing committee reports as set forth above, the five sets of formal charges were consolidated by order of the disciplinary 18board. The board subsequently filed in this court a single recommendation of discipline encompassing all five sets of formal charges.

Disciplinary Board Recommendation

07-DB-081, 07-DB-069, 08-DB-08I, 10-DB-0Í3 & 10-DB-07U

After reviewing the consolidated matters, the disciplinary board adopted the findings and conclusions of the hearing committees. The board determined that the record supports a finding that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
Based on these findings, the board determined respondent knowingly, if not intentionally, violated duties owed to his clients, the legal profession, and the legal system, causing significant harm to his clients. The board was particularly disturbed by respondent’s statement during his mitigation hearing that he was joining the Army to let “someone else [deal] with things,” which indicated he does not have a true appreciation of his professional obligations or of the importance of rectifying the harm he has caused. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction for respondent’s misconduct is a suspension from the practice of law.
In aggravation, the board found a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, and indifference to making restitution. In mitigation, the board found the following factors: absence of a prior disciplinary record, personal or emotional problems,[1] and *431 inexperience in the practice of law (admitted 2008).
| ¡¡Turning to the issue of an appropriate sanction, the board recognized that in In re: Trichel, 00-1304 (La.8/31/00), 767 So.2d 694, the court established a one-year suspension as the baseline sanction for one instance of neglect of a client matter, failure to communicate with a client, and failure to properly terminate the client’s representation. However, given that respondent has engaged in multiple instances of such misconduct, the board felt a lengthier suspension is warranted in this case. Accordingly, given the totality of the circumstances, the board recommended respondent be suspended from the practice of law for three years. The board also recommended that respondent be ordered to pay restitution to his clients and refund all unearned fees.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to [¡¡¡prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports a finding that respondent neglected his clients’ legal matters, failed to communicate with his clients, failed to refund unearned fees and properly terminate the representation of his clients, and failed to cooperate with the ODC in its investigations. In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record supports a finding that respondent knowingly violated duties owed *432 to his clients, the legal system, and the legal profession. Respondent’s actions caused actual harm to his clients. The baseline sanction for this misconduct is a suspension from the practice of law.
In addition to the aggravating factors found by the board, we find the aggravating factor of refusal to acknowledge the wrongful nature of the conduct is present. We further agree with the board’s analysis of the factors in mitigation.
Turning to the issue of an appropriate sanction, we note that in our prior cases, we have imposed a wide range of sanctions for varying degrees of neglect, failure to communicate, failure to return unearned fees, and failure to cooperate l^with the ODC. However, in cases that involve several clients, we have generally imposed lengthy suspensions from the practice of law, with no portion of the suspension deferred, up to disbarment.[2] The facts of one such case appear to be very similar to those of the instant case. In In re: Brown, 04-1119 (La.1/14/05), 892 So.2d 1, the attorney neglected the legal matters of five clients, failed to communicate with his clients, failed to return unearned legal fees owed to two clients, failed to safeguard one client’s property, and failed to cooperate with the ODC, causing actual injury to his clients. Finding that Mr. Brown “demonstrated in a convincing fashion that he has no regard for the welfare of his clients or for his professional obligations,” we imposed a three-year suspension. We find a similar sanction is warranted in the instant matter.
Accordingly, we will accept the recommendation of the disciplinary board and suspend respondent from the practice of law for three years. This suspension shall be retroactive to the date of respondent’s interim suspension.[3] We will also order respondent to pay restitution to his clients subject of the formal charges.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Erik Stafford Pittman, Louisiana Bar Roll number 28722, be and he hereby is suspended from the practice of law for a period of three years, retroactive to November 19, 2008, the date of his interim suspension. It is further ordered that respondent pay restitution to his clients subject of the formal charges. All costs |;aand expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. The board assigned this factor very little weight, as the record does not establish a *431 direct connection between respondent's personal problems (the death of his father, his mother’s health problems, and the conclusion of a long-term relationship with his girlfriend) and his misconduct.

. See, e.g., In re: Wharton, 03-1816 (La. 10/17/03), 872 So.2d 459 (three-year suspension; seven clients); In re: Watley, 03-0233 (La.9/5/03), 854 So.2d 315 (disbarment; six clients); In re: Turissini, 03-0549 (La.6/6/03), 849 So.2d491 (three-year suspension; six clients).

. We have historically chosen to exercise our discretion to make suspensions run retroactive to the date of prior interim suspensions. See, e.g., In re: Miller, 09-2680 (La.5/21/10), 34 So.3d 839; In re: Sterling, 08-2399 (La. 1/30/09), 2 So.3d 408; In re: Lacobee, 03-2010 (La.2/20/04), 866 So.2d 237; In re: Gaudin, 00-2966 (La.5/4/01), 785 So.2d 763; In re: Ferrouillet, 99-3434 (La.6/30/00), 764 So.2d 948; In re: Edwards, 99-1783 (La. 12/17/99), 752 So.2d 801.